ROBERTS & ELLIOTT LLP
JAMES ROBERTS, CBN 98804
KIRK W. ELLIOTT, CBN 141641
SHARMI SHAH, CBN 23310
150 Almaden Boulevard
Suite 950
San Jose, CA 95113
TEL: (408) 275-9800
FAX: (408) 287-3782

MARK GOLDROSEN, CBN 101731
Attorney at Law
255 Kansas Street, Suite 340
San Francisco, California 94103
TEL: (415) 565-9600
FAX: (415) 565-9601

Attorneys for Defendant
JASPER KNABB

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO VENUE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR-11-0009-2 JSW |
| ) | |
| Plaintiff, ) | DEFENDANT KNABB'S |
| ) | SENTENCING MEMORANDUM |
| vs. ) | |
| ) | |
| JASPER KNABB, ) | |
| ) | |
| Defendant. ) | |
| ) | DATE: March 8, 2012 |
| ) | TIME: 2:00 p.m. |
| _____ ) | DEPT: Hon. Jeffrey S. White |

Defendant JASPER KNABB, remorsefully appears before this honorable Court for entry of judgment and sentencing. Due to substantial mitigating circumstances regarding Mr. Knabb's character and background, the defense respectfully requests that the Court vary downward from the applicable Guidelines range and impose a sentence of 40 months imprisonment.

**I.      PLEA AGREEMENT**

Mr. Knabb and the government entered into a written plea agreement pursuant to

1  Rules 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure. Mr. Knabb
2  pleaded guilty to conspiracy to commit securities fraud (18 U.S.C. § 1349), securities fraud
3  (18 U.S.C. § 1348), and keeping false books and records (§§ 78m(b)(2)(A), 78 m(b)(5) and
4  78ff, 17 C.F.R. § 240.13b2-1). The plea agreement calculated Mr. Knabb's adjusted offense
5  level under the Sentencing Guidelines to be 26. No agreement was reached with respect to
6  his criminal history category.

7  The parties agreed that the Court should not order restitution since resolution of the
8  parallel proceeding before the SEC included an agreement to pay disgorgement and interest
9  penalties in the amount of $40 million. The government has promised to recommend a
10 sentence within the Guidelines calculations set forth in the plea agreement. Mr. Knabb is
11 permitted to argue for a downward variance from the applicable Guidelines range based on
12 18 U.S.C. § 3553(a) factors. (Plea Agreement at ¶ 7.)

**II. PRESENTENCE INVESTIGATION REPORT**

14 Mr. Knabb has no objections to the Guidelines calculations set forth in the presentence
15 investigation report. He agrees that his total offense level is 26, that his Criminal History
16 Category is I, and that the applicable Guidelines range is 63 to 78 months. As explained
17 more fully below, Mr. Knabb does not agree with the probation officer's recommendation
18 that he be sentenced to 63 months in prison. Mitigating circumstances support a sentence
19 below the applicable Guidelines range.

**III. MR. KNABB RESPECTFULLY REQUESTS THAT HE BE SENTENCED TO A X-MONTH TERM OF IMPRISONMENT**

22 In *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008), the Ninth Circuit
23 explained that,

> The overarching statutory charge for a district court is to "impose a sentence sufficient, but not greater than necessary" to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. 18 U.S.C. § 3553(a) and (a)(2).

1  All sentencing proceedings are begun by the district court calculating the applicable Guidelines range. The district court then should consider the sentencing factors set forth in section 3553(a) to determine if they support the sentence suggested by either of the parties. *Carty*, 520 F.3d at 991. These factors include:

> the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed; the kinds of sentences available; the kinds of sentence and the sentencing range established in the Guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims. 18 U.S.C. § 3553(a)(1)-(7).

*Id*.

"The district court may not presume that the Guidelines range is reasonable." *Id*. The applicable range is simply one factor among the many § 3553(a) factors that are to considered by the district court and it is to be given no more or less weight than any other. *Id*. Ultimately, the district court must make an individualized sentencing determination based on the facts relevant to the defendant and the crime. *Id*.

It is well understood by Mr. Knabb that he committed serious crimes for which he will be punished by a sentence of imprisonment. As explained below, however, Mr. Knabb believes that a sentence below the advisory Guidelines range is supported by the factors set forth in section 3553(a). Mr. Knabb's character and history reflect many circumstances in mitigation that warrant imposition of a 40-month sentence..

**A.     Early Admission of Wrongdoing**

Prior to being charged with any crimes related to this case, Mr. Knabb entered into a Statute of Limitations Tolling Agreement with the government so that the parties had sufficient time to engage in discussions about a resolution of the case. (See attached agreement.) Mr. Knabb then pleaded guilty at a very early stage of the court proceedings, thereby sparing the government the time and expense of having to prepare for indictment and trial in a complex financial fraud case and also conserving judicial resources. Mr. Knabb's

1 initial appearance before the magistrate judge occurred on July 28, 2011. At that time he
2 waived his right to prosecution by indictment and consented to prosecution by information.
3 (Doc. 29.) Later that day, Mr. Knabb made his first appearance before the district court. At
4 that appearance, he pleaded guilty to all counts of the information that had been filed against
5 him. Mr. Knabb's guilty plea was not motivated by the cooperation agreement his co-
6 defendant made with the government. Entry of his guilty plea was delayed only because he
7 suffered a shattered calcaneus in March 2011 and was thus medically unable to appear in the
8 district court until July 28, 2011. (See Documents 12, 19, and 23.)

9 In addition, prior to appearing in the district court for this criminal case, Mr. Knabb
10 consented to a judgment of permanent injunction and other relief against him in the parallel
11 SEC proceeding. (*SEC v. Jasper Knabb*, CV 09-02302 JSW.) That judgment included an
12 order that Mr. Knabb pay disgorgement of ill-gotten gains, prejudgment interest thereon, and
13 civil penalties as later determined by the Court. (Document 64, p. 5.)

14 **B.     Remorsefulness**

15 Mr. Knabb is extremely remorseful for his criminal conduct. He informed
16 Supervisory United States Probation Officer Christina Carrubba that he "followed the wrong
17 course of action and regret[ted] the decisions that [he] was making at that time in [his] life."
18 He recognizes that he "mislead people who trusted" him, and that his conduct will cause his
19 family members to suffer because he will now be incarcerated as punishment for his crimes.
20 (PSR at ¶ 41.)

21 **C.     Lack of Significant Criminal Record**

22 Another mitigating circumstance is Mr. Knabb's lack of a significant criminal record.
23 Mr. Knabb, who is 45 years old, has no prior felony convictions and appears to have no prior
24 misdemeanor convictions. The presentence investigation report discloses two prior
25 convictions that appear to be infractions, based on the punishments imposed – $125 bond
26 forfeiture for negligent operation of a boat and waterskis in 2000 and $200 fine for expired
27 vehicle license and speeding in 2002. (PSR at ¶¶ 59-61.) These minor offenses are not
28

indicative of a defendant with a serious criminal past.

### D. Hardships During Childhood and Adolescence

Mr. Knabb faced a number of emotional and physical hardships during his childhood that have significantly effected his emotional well-being as an adult. Mr. Knabb was initially raised by his now deceased maternal grandparents. He did not know where his parents were at that time. Mr. Knabb enjoyed living with his grandparents, but at age five he was taken by his mother, Adell Lorraine Knabb, and her husband, John D. Knabb II. Mr. Knabb was very confused and traumatized by having to leave his grandparents, whom he adored. (PSR at ¶ 70.)

Mr. Knabb was told by his mother and her husband that John D. Knabb, II was his biological father. That, however, was not true. Mr. Knabb continued to believe John D. Knabb, II was his father until he was 13 years old. At that time, a family member informed him that his real father was Gary Matthews, whom Mr. Knabb had never met. Learning that his mother and step-father had lied to him was very disconcerting to Mr. Knabb, especially when his mother continued to insist his step-father was his actual father long after the truth had been revealed. Mr. Knabb felt betrayed and was very confused to learn that the man he had been calling dad for the past 8 years was not actually his father. (PSR at ¶ 69.)

Because John D. Knabb, II was in the United States Army, Mr. Knabb's family moved often. Mr. Knabb was unable to form lasting relationships of significance with friends, teachers, or adults other than his parents. Moreover, Mr. Knabb's home life was marred by physical abuse. His stepfather beat him often and severely. On one occasion at age 18, Mr. Knabb was beaten so badly by his step-father that he suffered several broken ribs. When he was 11, Mr. Knabb was physically punished by his stepfather approximately 20 times. These beatings were especially traumatic for Mr. Knabb. His stepfather was an All-American college athlete, a highly decorated Viet Nam War veteran, an adviser to President Reagan, and an inventor. Mr. Knabb very much admired his step-father, was inspired by his achievements, and desperately wanted to please him. To be beaten repeatedly by the person

1  whose love he so craved was devastating for Mr. Knabb. Indeed, on many occasions Mr.
2  Knabb went to his step-father to tell him of some accomplishment he had achieved. His hope
3  was that his step-father would be proud of him and express happiness. Instead, his step-
4  father found some fault in what Mr. Knabb had done and punished him with a severe beating.
5  (PSR at ¶¶ 73. 75.)

6       The physical violence experienced by Mr. Knabb at home was exacerbated by the
7  alcoholism of his mother and his step-father. His mother's alcoholism prevented her from
8  protecting Mr. Knabb from the beatings inflicted by his step-father and from becoming
9  involved in Mr. Knabb's life. His step-father's alcoholism caused him to become angry and
10 to direct his rage at Mr. Knabb.

11      The physical and emotional abuse Mr. Knabb suffered as a child and adolescent
12 caused him great mental anguish and internal conflict. He told Supervisory Probation Officer
13 Christina Carrubba he felt "uncertainty about what [he] should believe in and who [he is]."
14 He felt he did "not have a stable and supportive past." (PSR at ¶ 82.)

15      Unfortunately, Mr. Knabb did not have the insight to seek treatment as an adult for
16 the emotional problems caused by his abusive upbringing. He was raised by his step-father
17 to believe that he should not involve others with his problems and should just walk them off.
18 When he was interviewed by Ms. Carrubba she strongly advised Mr. Knabb to see a therapist
19 to address his emotional issues. Mr. Knabb has followed that advice and begun therapy and
20 psychiatric treatment in Washington.

21      Throughout his life, Mr. Knabb felt that there was an imaginary person with whom
22 he was constantly competing. He felt tremendous pressure to always be better, faster and
23 more successful than this imaginary person but in his own mind he could never win. This
24 pressure finally dissipated in 2008 when he left Pegasus Wireless and the world of
25 telecommunications.

26      **E.    Alcoholism and Other Addictions**
27      Mr. Knabb's mental health issues manifested themselves in many addictions. From
28

1 2004 to 2007, during the time that his crimes were committed, he was addicted to alcohol,
2 drinking on a daily basis. (PSR at ¶85.) He also suffered from addictions to gambling and
3 shopping. He gambled from 1999 to 2006, with the most severe gambling occurring in 2005
4 and 2006. For many years he also bought many expensive items in the hope that having
5 them would make him happy. (PSR at ¶83.) Mr. Knabb could not stop himself from having
6 another drink, gambling away all his money, or buying another expensive gadget or toy.
7 Fortunately, Mr. Knabb is now receiving treatment for his addictions and very much wants
8 to continue with his rehabilitation effort.

### F. Prior Cooperation With Law Enforcement

Mr. Knabb previously provided substantial assistance to law enforcement in a federal criminal prosecution. The nature and extent of that cooperation was spelled out in *United States v. Coviello*, 225 F.3d 54, 60 (1st Cir. 2000). While Mr. Knabb was operating a computer store in North Carolina he was approached by a person who offered to sell him 8,000 stolen Microsoft discs. Mr. Knabb reported these conversations to Microsoft and to the FBI, and agreed to assist the law enforcement investigation. At the FBI's direction, Mr. Knabb told the seller that he had a customer in South America who would buy the discs. Mr. Knabb wore a recorder while meeting with the seller and also recorded prior telephone conversations with him. The FBI arrested the seller at the meeting that had been set up for Mr. Knabb to make the purchase. Mr. Knabb later testified for the government at the defendants' trial despite threats to his own and his family's safety. The defendants were found guilty at trial.

### G. Positive Contributions to Society

Although Mr. Knabb has committed a crime in the instant case that has caused financial and emotional harm to many persons, he has made positive contributions to society in the past. Prior to his employment with Pegasus Wireless, Mr. Knabb was a successful businessman/entrepreneur, owning four technology-related companies over a period of 14 years and working as an executive for several others. In his businesses, he was a job creator,

1   employing numerous workers.  He also was an inventor of various telecommunications
2   products, including the protocol for Wi-Fi which he released for the use of others without
3   compensation, and he won several awards for his work. (PSR at ¶ 98.) According to the
4   letter submitted by friend R. Scott Rosenberger, Mr. Knabb has an "amazing intellect"
5   related to "electronics, software, and mechanical items." (See attached letter.) Significantly,
6   all of Mr. Knabb's accomplishments were achieved without the benefit of having attended
7   college or receiving formal training in computers or electronics.
8         In addition, Mr. Knabb previously was involved with several charities, having made
9   donations to Crossroads Centre Antigua, a drug and alcohol rehabilitation facility, and having
10  served as a volunteer pilot with Wounded Warriors.  As a Wounded Warriors volunteer, he
11  flew wounded veterans to locations in Alaska for hunting and fishing expeditions. (PSR at
12  ¶ 75.)  In a letter to this Court, friend Cameron Byerley wrote that he accompanied Mr.
13  Knabb when he flew donations to a Vietnam veteran living alone in the Alaskan forest. (See
14  attached letter.)

15        **H.    Stable and Positive Relationship with Wife and Children**

16        On October 23, 2010, subsequent to his involvement in the crimes he committed, Mr.
17  Knabb married Laura Valaas.  They have a very strong and loving relationship.  Ms. Valaas
18  owns Skadi Nordic, a ski accessory design and manufacturing company.  Mr. Knabb assists
19  his wife's company by engineering new products for her to sell as well as running and
20  maintaining the equipment needed to produce, print, and package the products. (See attached
21  letter from Laura Valaas.)  Indeed, according to a letter submitted by Ms. Valaas's father,
22  Mr. Knabb often spends 16 hours a day working for his wife's business.  "[H[e has amazing
23  mastery of both the mechanical and technical aspects of the manufacturing process involved
24  in Skadi Nordic." (See attached letter.)
25        Ms. Valaas has provided great support to Mr. Knabb during the pendency of the
26  criminal case and she intends to continue supporting him while he is serving his sentence.
27  Mr. Knabb and Ms. Valaas have a six-month old son together, who will suffer greatly from
28

1 a lengthy separation from his father . Mr. Knabb's two daughters from his first marriage are
2 also very supportive of him. Mr. Knabb desperately wants to be a good husband to his wife
3 and a good father to his children, and to be able to spend time with them.  His positive
4 relationship with his family will serve as a strong incentive for Mr. Knabb not to re-offend
5 after he is released from prison.
6     Mr. Knabb's life has truly changed for the better as a result of his current family
7 situation. (PSR at ¶¶ 76-77.)  Since she met Mr. Knabb in 2009, Ms. Valaas has

> witnessed a quantum change in his attitude from anger and defiance to confusion and fright and finally to acceptance of responsibility and acknowledgment of error.  The process of accountability and introspection . . . has been ongoing in Jay over the past two years.

(See attached letter.)

**I.**     **Strong Community Support**

    Many family members, friends and a former employee of Mr. Knabb have submitted letters for the Court to consider in determining the appropriate sentence.  These letters attest to his being generous, honest, innovative, hard-working, intelligent, a loyal friend, and a loving and supportive husband, father, brother and uncle.

    Mr. Knabb's strong support in the community will provide him with even more incentive to lead a law-abiding life after his release from the Bureau of Prisons.

**IV.**     **CONCLUSION**

    The mitigating circumstances outlined above and in the presentence investigation report justify a sentence below the applicable Guidelines range.  Moreover, such a sentence will satisfy the requirement that the sentence imposed be "sufficient, but not greater, than necessary" to comply with the purposes set forth in paragraph (2) of 18 U.S.C. § 3553(a).  Forty months in prison is commensurate with the seriousness of Mr. Knabb's offenses and is substantial enough to deter Mr. Knabb and others from committing similar crimes in the future.

    It is also respectfully quested that Mr. Knabb be permitted to voluntarily surrender.

1 According to the presentence investigation report, Mr. Knabb "is a good candidate for voluntary surrender." He "has kept all court appearances, complied with the conditions of pretrial release, and is not viewed as a flight risk or a danger to the community." (PSR recommendation at 3.)

DATED: February 28, 2012				Respectfully submitted,


					 /s/ Kirk Elliott
					MARK GOLDROSEN
					JAMES ROBERTS
					KIRK W. ELLIOTT
					SHARMI SHAH

					Attorneys for Defendant
					JASPER KNABB