ROBERTS & ELLIOTT LLP
JAMES ROBERTS, CBN 98804
KIRK W. ELLIOTT, CBN 141641
SHARMI SHAH, CBN 23310
150 Almaden Boulevard
Suite 950
San Jose, CA 95113
TEL: (408) 275-9800
FAX: (408) 287-3782

MARK GOLDROSEN, CBN 101731
Attorney at Law
255 Kansas Street, Suite 340
San Francisco, California 94103
TEL: (415) 565-9600
FAX: (415) 565-9601

Attorneys for Defendant
JASPER KNABB

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO VENUE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> JASPER KNABB, ) <br> ) <br> Defendant. ) <br> ) <br> ) <br> _____) | No. CR-11-0009-2 JSW <br><br> DEFENDANT KNABB'S SECOND SUPPLEMENTAL SENTENCING MEMORANDUM; REQUEST FOR EVIDENTIARY HEARING <br><br><br> DATE: June 7, 2012 <br> TIME: 2:00 p.m. <br> DEPT: Hon. Jeffrey S. White |

**I.  INTRODUCTION**

On May 23, 2012, the probation officer filed a Second Amended Presentence Investigation Report. The report concludes that Mr. Knabb obstructed justice and therefore adds two points to his offense level pursuant to *USSG Section 3C1.1*. The report calculates a total offense level of 39, and a Criminal History Category I. According to the report, the advisory Guidelines range is 262 to 300 months. The report recommends a sentence of 281 months, 218 months (18 years and two months) *more* than its original 63-month

recommendation and one year and seven months less than the maximum sentence.

Mr. Knabb previously filed an initial sentencing memorandum on February 29, 2012 (Doc. #53) and a first supplemental sentencing memorandum on May 10, 2012 (Doc. #60). Mr. Knabb renews the objections made in the prior pleadings. In this second supplemental sentencing memorandum, Mr. Knabb objects to the finding that he obstructed justice, to the amended sentencing recommendation made by the probation officer, and to information about his background and conduct newly added to the report. Mr. Knabb further requests an evidentiary hearing to the extent necessary to resolve these disputes.

## II.     MR. KNABB DID NOT OBSTRUCT JUSTICE

*USSG Section 3C1.1* states that a defendant's offense level under the Sentencing Guidelines will be increased by two levels if:

> (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense

Application Note 2 explains some limitations on the applicability of *section 3C1.1*. A defendant's refusal to provide information to a probation officer "is not a basis for application of" this section. In addition, "[i]n applying this provision in respect to alleged false . . . statements by the defendant, the court should be cognizant that inaccurate . . . statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate . . . statements necessarily reflect a willful attempt to obstruct justice."

Conduct that ordinarily does not warrant application of an adjustment pursuant to *section 3C1.1* includes "providing incomplete or misleading information, not amounting to a material falsehood, in respect to a presentence investigation." App. Note 5(C). Only when a defendant provides "materially false information to a probation officer in respect to a presentence . . . investigation for the court" will an upward adjustment normally apply. App. Note 4(H). "'Material' . . . information, as used in [section 3C1.1], means . . . information that, if believed, would tend to influence or affect the issue under determination." App. Note 6.

1    Previously, the probation officer found that Mr. Knabb had not obstructed justice and
2  that no increase in the offense level was warranted on that basis. The probation officer has
3  now changed course. She argues that an upward adjustment is supported by three factors:
4  (1) Mr. Knabb's failure to report income he had received from an eBay account; (2) Mr.
5  Knabb's false claim that he no longer had an interest in Sky Mountain Trust, and (3) Mr.
6  Knabb's false claim that he was an alcoholic between 2004 and 2007. 2nd Amended PSR at
7  ¶¶ 34-38.
8    Mr. Knabb submits that an obstruction of justice adjustment is not warranted for
9  several reasons. First, the information he provided to the probation officer regarding the
10 eBay Account, Sky Mountain Trust and his alcoholism was not false. Second, the question
11 of whether Mr. Knabb has a financial interest in Sky Mountain Trust is not material since the
12 property owned by the Trust was already conveyed to the government as restitution in the
13 parallel SEC case. Finally, the eBay account may not be used as a basis for an obstruction
14 of justice adjustment because it is not related to the instant offense, relevant conduct, or a
15 closely related offense.

16    **A.    EBAY ACCOUNT**

17    The probation officer does not argue that Mr. Knabb obstructed justice by failing to
18 disclose he had an eBay account, now known as "pipefreeze", or that he later transferred the
19 account to his wife. An eBay account alone is not a financial asset which must be disclosed
20 during the presentence investigation. Instead, the probation officer argues that Mr. Knabb
21 earned income from selling items through the eBay account and that this income should have
22 been disclosed. Mr. Knabb has told the probation officer that he did not use the account to
23 earn income. Rather, his wife used it to sell items and that any income she earned was her
24 separate income pursuant to their pre-nuptial agreement. Laura Valaas, Mr. Knabb's wife,
25 gave the same information to the probation officer and included the income she earned from
26 eBay, as well as her eBay related expenses, in the monthly cash flow statement she provided.
27    Nothing alleged in the presentence report disproves Mr. Knabb's claims regarding the
28 account. Two persons interviewed by the probation officer said that, at some unspecified

1  date in the past, Mr. Knabb collected model trains. One of the two also said that Mr. Knabb possessed a number of Rolex watches. Neither person stated, however, that Mr. Knabb sold any of his trains or his Rolex watches through an eBay account in order to earn income. Indeed, one of the two was not even aware that Mr. Knabb had an eBay account. 2nd Amended PSR at ¶ 35.

The probation officer, nevertheless, leaps to the uncorroborated conclusion that Mr. Knabb must have been the person who was selling model trains and Rolex watches on the pipefreeze account during the time of the presentence investigation. In so doing, she disregards the information and documentation provided to her by Ms. Valaas, who maintains a business, Lulu Trains. In this business, Ms. Valaas buys model trains on eBay, and from estate sales and other sources, and then sells the trains through the eBay account she took over from Mr. Knabb. To corroborate her explanation, Ms. Valaas provided the probation officer with 38 pages of receipts showing the purchase of hundreds of model train set pieces by her business in January and February 2012. In addition, Ms. Valaas told the probation officer that she had sold four watches on the eBay account. Two she bought in a secondhand store and resold for a profit. The two others were given to her by a family member and sold to pay for attorney fees. See Memorandum of Laura Valaas, attached as **Exhibit A**.

In addition, eBay records identify a shipping address history for the pipefreeze account. That history identifies the name and address of the person to whom items purchased are to be sent. Except for one month, Laura Valaas was the name of that person from March 29, 2010 to April 2, 2012.[1] On April 2, 2012, the identity of the shipping address was changed to Skadi Nordic, Ms. Valaas' other company. See eBay Account Information, attached as **Exhibit B**. Furthermore, eBay records provided by the government indicate that no sales were made through the account prior to June 24, 2010. By that time, Mrs. Valaas was exclusively using the account and the identity of the shipping party had been changed to her name.

---

[1] The exception was December 7, 2011 to January 2, 2012 when Gary Mathews was listed as the person to whom items were to be shipped.

- 4 -

1　　　　The government's analysis of the eBay account is also noteworthy. In its Reply to
2　Jasper Knabb's Supplemental Sentencing Memorandum at 4, (Doc. #61), the government
3　concluded that "[m]ost items sold are below $1,000" and that the eBay "records do not
4　suggest significant hidden assets." In addition, since not all items sold through the account
5　had been purchased on eBay, the government could not determine how much profit, if any,
6　had been made as a result of all the sales. The government also was "unable to connect the
7　items bought and sold on the eBay account to the proceeds of the offense." Id. The
8　government's analysis supports the conclusion that the eBay account was not relevant to the
9　Mr. Knabb's offense of conviction, any relevant conduct, or a closely related offense.

10　　　**B.　SKY MOUNTAIN TRUST**

11　　　　The probation officer claims that Mr. Knabb "appears to still have an interest in Sky
12　Mountain Trust," contrary to Mr. Knabb's prior statement that he did not have a financial
13　interest in the Trust. 2nd Amended PSR at ¶ 36. The probation officer is incorrect. Mr.
14　Knabb no longer has a financial interest in the Trust, although other members of his family
15　do.

16　　　　The Sky Mountain Trust was set up in Florida. When it was first established, Mr.
17　Knabb's ex-wife, Tammy Knabb, was the grantor and sole trustee, and the beneficiaries were
18　Mr. Knabb and their two children. The sole remaining asset of the trust is a residential
19　property located at 8100 Sky Mountain Lane, Anchorage, Alaska.

20　　　　In early November 2011, Ms. Knabb was unable to pay the taxes due, by the Trust,
21　on the Alaska property and the municipality was seeking to foreclose on it. Ms. Knabb
22　wanted to remove herself from the Trust in order to avoid the stress of dealing with these
23　problems. She contacted Lewis and White, the attorneys in Florida who had originally set
24　up the trust, seeking legal advice. Attorney Lewis contacted Kevin Dixon, who lived in
25　Anchorage. Mr. Dixon was familiar with the property and had helped with the Trust before.
26　Mr. Dixon agreed to succeed Ms. Knabb as the trustee and to see if he could do anything to
27　save the property. Based on the advice of her attorneys, Ms. Knabb took several steps to
28　remove herself from the Trust. See Memorandum of Lewis and White, attached as **Exhibit**

1  **C**.

2  On November 11, 2011, Tammy Knabb resigned as trustee and appointed Kevin
3  Dixon to succeed her as trustee of the Trust.   See Appointment of Successor Trustee and
4  Resignation, attached as **Exhibit D**.  On November 16, 2011, Ms. Knabb, in her capacity as
5  grantor of the Trust, amended the Trust to delete all references to Mr. Knabb and their
6  children, and to extinguish all rights  Mr. Knabb and their children had in it.  See Disclaimer
7  of Beneficial Interest and Amendment to Trust, attached as **Exhibit E**.  A copy of this
8  document was previously provided to the probation officer.  Ms. Knabb also provided written
9  notice of the amendment regarding Mr. Knabb's rights to Mr. Dixon.  See Memorandum to
10 Kevin Dixon, attached as **Exhibit F**.  Ms. Knabb wanted to remove Mr. Knabb and the
11 children as beneficiaries due to her divorce.

12 On November 17, 2011, Ms. Knabb granted Mr. Dixon the irrevocable power to
13 appoint new beneficiaries to the trust and relinquished all of her interests in it.
14 Relinquishment of Powers, attached as **Exhibit G**.  In March 2012, Mr. Dixon designated
15 TCFFBL Irrevocable Gift Tax Exclusion Trust to be the sole beneficiary of the trust.
16 TCFFBL Irrevocable Gift Tax Exclusion Trust was a trust established by Laura Valaas with
17 Tristan Knabb, her son with Mr. Knabb, as the beneficiary.  On April 21, 2012, Mr. Dixon
18 resigned as the trustee of the Sky Mountain Trust and was replaced by Glen Roberts.
19 Resignation and Acceptance of Successor Trustee, attached as **Exhibit H**.  Since then Mr.
20 Roberts has remained as the trustee and the beneficiary has not changed.

21 As the trust history described above makes clear, Mr. Knabb is not a beneficiary of
22 the Sky Mountain Trust and he has no other direct interest in it.  The information he provided
23 to the probation officer, that his interest in the trust was extinguished on November 16, 2011,
24 was truthful.  To the extent he did not explain that the beneficiary later became the TCFFBL
25 Irrevocable Gift Tax Exclusion Trust, that omission did not constitute an obstruction of
26 justice under *USSG section 3C1.1*.  As Application Note 2 explains, a defendant's failure to
27 provide information to a probation officer "is not a basis for application of" this section.
28 Indeed, even "providing incomplete or misleading information, not amounting to a material

1 falsehood, in respect to a presentence investigation" does not normally constitute obstruction
2 of justice. Application Note 5(C).

3 In any event, Mr. Knabb's failure to inform the probation officer of the identity of the
4 new beneficiary was not material. Ms. Knabb was a relief defendant in the companion SEC
5 case. On August 9, 2011, Ms. Knabb consented to a final judgment that required her to pay
6 a total amount of $9,187,418.27. In partial payment of this amount, she agreed to convey the
7 property owned by the Sky Mountain Trust to the SEC. The conveyance was to occur after
8 the district court, upon the SEC's motion, appointed a liquidation agent to dispose of the
9 property.[2] See Final Judgment Against Relief Defendant (Redacted Version), attached as
10 **Exhibit I**. Thus, Mr. Knabb could not have any financial interest in the property owned by
11 the Sky Mountain Trust since that property is part of the SEC's judgment against Ms. Knabb
12 and the SEC continues to have equitable rights in it. Contrary to the probation officer's
13 claim, the Sky Mountain Trust is not an asset relevant to Mr. Knabb's ability to pay a fine.

14 **C. ALCOHOLISM**

15 Mr. Knabb has been evaluated by a licensed chemical dependency professional who
16 determined that Mr. Knabb suffers from alcohol addiction. See Letter from Wayne Hersel,
17 C.D.P., attached as **Exhibit J**. Yet, the probation officer claims that Mr. Knabb made a false
18 statement regarding his alcoholism during the years 2004 through 2007. According to the
19 probation officer, at least five persons she interviewed "suggested" that Mr. Knabb did not
20 have a problem with alcohol during this time period. 2nd Amended PSR at ¶ 37. None of the
21 persons interviewed by the probation officer lived full time with Mr. Knabb during these
22 years and most had infrequent contact with him. For example, Mr. Knabb's mother, Lorraine
23 Knabb, had no contact with Mr. Knabb from 1994 to December 2008. 2nd Amended PSR at
24 ¶ 121. Mr. Knabb's former mistress Jamie Shulz said that their relationship was very intense
25 in the beginning but "then she would not hear from him for long periods of time. 2nd
26 Amended PSR at ¶ 127. Mr. Knabb's brother, John Knabb had very little contact with Mr.

---

28 [2] The SEC has yet to file the motion.

1  Knabb except for two and a half weeks they spent together in 2006. Mr. Knabb's aunt, Lyn
2  Terranova has seen Mr. Knabb only once since he was eight years old. Mr. Knabb's former
3  personal assistant, Andrew Marston did not begin working with Mr. Knabb until October
4  2006 (2nd Amended PSR at ¶ 24) and much of their contact was by telephone.[3] Thus, the
5  persons interviewed by the probation officer were either unaware of Mr. Knabb's alcohol
6  problems, for which he is now being treated, or not truthful in their statements.

The credibility of Mr. Knabb's mother is especially dubious. She and Mr. Knabb
have been estranged for many years and she is biased against him. Other statements made
by Mr. Knabb's mother to the probation officer are clearly false. She adamantly denied that
her husband was abusive to her, her children or any other family members, as claimed by Mr.
Knabb and others. Mr. Knabb's mother also said that she and her husband did not drink
alcohol to excess. 2nd Amended PSR at ¶ 121. On these points, Lorraine Knabb is readily
refuted. Both Mr. Knabb's brother and his aunt corroborated that Mr. Knabb's father was
abusive. See Memorandum of Carolyn Keller attached hereto as **Exhibit K**. They also
confirmed that Mr. Knabb's mother and father were alcoholics. 2nd Amended PSR at ¶ 114.
In addition, Mr. Knabb's mother denied that Mr. Knabb had any issues with gambling and
shopping. 2nd Amended PSR at ¶ 129. Yet, Mr. Knabb's gambling was confirmed by Ms.
Shulz and his shopping addiction was confirmed by Mr. Marston. 2nd Amended PSR at ¶¶
127-128. Lorraine Knabb's false statements regarding her husband's abusiveness, her own
alcoholism, and Mr. Knabb's problems with gambling and addiction cast great doubt on the
trustworthiness of her statements regarding Mr. Knabb's use of alcohol as well as all other
statements she made regarding Mr. Knabb.[4]

---

[3] Mr. Marston told the probation officer "he believes the defendant is not an alcoholic." 2nd Amended PSR at ¶ 127. Whether Mr. Marston's definition of an "alcoholic" is consistent with that of a mental health profession is unknown.

[4] Another clearly false statement made by Mr. Knabb's mother is that Mr. Knabb was selling Rolex watches on eBay when she visited him in 2008. 2nd Amended PSR at ¶150. The eBay records provided by the government show that no sales were made on Mr. Knabb's account prior to 2010. Mr. Knabb also disagrees with the other statements made by his mother that are reported in ¶¶

In addition, Mr. Knabb did not tell his mother in July 2011 that he needed to drink and take pain medications because it would be used in his defense for the instant offense. See 2nd Amended PSR at ¶ 133. The statement Mr. Knabb's mother attributes to Mr. Knabb makes no sense. Why would Mr. Knabb need to drink and take pain killers in 2011 to create a defense to a crime that occurred more than three years before? Moreover, it contradicts what Mr. Knabb told the probation officer regarding his use of alcohol. He said that in 2011 he was drinking much less frequently, only three drinks once a week. See 2nd Amended PSR at ¶ 130. Mr. Knabb's use of pain killers was not intended to create a defense to his crimes. He told the probation officer he began using pain medication in April 2011 after he shattered his ankle and had surgery.

### III.  OTHER OBJECTIONS

####   A.  FINE

In the initial presentence report, the probation officer concluded that Mr. Knabb does not have the ability to pay a fine. The probation officer amended her conclusion and now believes that he is able to pay. Mr. Knabb disagrees. He is supported entirely by his wife, whose income and assets are separate property under the prenuptial agreement. He does not have a financial interest in Sky Mountain Trust, which was conveyed to the SEC as part of the judgement against his ex-wife. The eBay business belongs to his wife, and the amount of profit, if any, has not been determined.

####   B.  VOLUNTARY SURRENDER

In the initial and first amended presentence reports, the probation officer viewed Mr. Knabb "as a good candidate for voluntary surrender. The defendant has kept all his court appearances, complied with the conditions of pretrial release, and is not viewed as a flight risk or danger to the community." Initial PSR Sentencing Recommendation at 3; 1st Amended PSR Sentencing Recommendation at 3.   Now, in the 2nd Amended PSR, the probation officer concludes that Mr. Knabb is not a good candidate for voluntary surrender.

---

121(regarding grandfather's assets and will), 136 (school), 146 (military) and 150 (financial condition).

2nd Amended PSR Sentencing Recommendation at 5. Mr. Knabb disagrees. He has continued to make all his court appearances, even when the sentencing recommendation of the probation officer has changed for the worse, as well as comply with the conditions of pretrial release. He does not have any financial assets that would enable him to flee. He lives with his wife, who owns two homes and has two businesses in Washington. Together they have a son, who is less than one year old. Mr. Knabb is also not a danger to the community. He has not engaged in criminal conduct while his case has been pending.

## IV.   CONCLUSION

The probation officer has drastically changed her sentencing recommendation from 63 months in the initial PSR to 281 months (one year and seven months less than the statutory maximum) in the 2nd Amended PSR. The increase in the sentencing recommendation is unjustified. It is based on incorrect factual findings and misapplications of the sentencing guidelines, as explained in this sentencing memorandum and the two prior defense memoranda.

The sentence called for by the probation officer is unduly harsh. Mr. Knabb pleaded guilty at his first appearance before the district court. He has no prior felony convictions. His childhood was marred by numerous emotional and physical hardships, and he has battled alcoholism and other addictions as an adult. Previously, Mr. Knabb provided substantial assistance to the government's prosecution of the defendant in *United States v. Coviello*, 225 F.3d 54, 60 (1st Cir. 2000). He has also made many positive contributions to society in the telecommunications field. Presently, he is in a stable and loving relationship with his wife and their young son and he has strong support in his community. The 40-month sentence previously requested by Mr. Knabb remains appropriate.[5]

DATED: May 31, 2012              Respectfully submitted,

      */s/ Kirk Elliott*
      KIRK W. ELLIOTT
      MARK GOLDROSEN
      Attorneys for Defendant JASPER KNABB

---

[5] Attached as Exhibit L is an addition letter regarding Mr. Knabb's character.

- 10 -